STATE OF NORTH CAROLINA  IN THE GENERAL COURT OF JUSTICE
                                SUPERIOR COURT DIVISION
COUNTY OF IREDELL                    20-CVS-3087

REBECCA RAMSEY-DEEL,

Plaintiff

vs.                                  COMPLAINT
                                  (Jury Trial Demanded)
TOWN OF MOORESVILLE,
GERALD CHILDRESS, AND
RYAN RASE,

Defendants.

COMES NOW the Plaintiff, Rebecca Ramsey-Deel, by and through the undersigned counsel, who does allege and say of the Defendants, Town of Mooresville, Gerald Childress, and Ryan Rase as follows:

## PARTIES

1. Plaintiff Rebecca Ramsey-Deel (hereinafter "Deel") is an individual and resident of Iredell County, North Carolina and was employed by Defendant Town of Mooresville within the State of North Carolina.

2. Defendant Town of Mooresville is a municipality organized pursuant to the laws of the State of North Carolina and incorporated within Iredell County.

3. Defendant Gerald Childress (hereinafter "Childress"), on information and belief, is an individual and resident of Iredell County, North Carolina and was employed by Defendant Town of Mooresville as the Deputy Chief of Police at all times relevant to this complaint.

EXHIBIT 1

4. Defendant Ryan Rase (hereinafter "Rase"), on information and belief, is an individual and resident of Iredell County, North Carolina and served as Acting Town Manager for Defendant Town of Mooresville at all times relevant to this complaint.

## JURISDICTION AND VENUE'

5. The North Carolina General Court of Justice have personal jurisdiction over the Defendants by virtue of the Defendants' residency within this State and by virtue of the incidents giving rise to this complaint having occurred within this State.

6. The North Carolina General Courts of Justice have subject matter jurisdiction over this action.

7. Upon information and belief, the Superior Court Division of the North Carolina General Court of Justice in operation in Iredell County, North Carolina is the sole appropriate and proper forum for this action, as said county is the county in which Plaintiff resides.

## FACTS ALLEGED

8. Deel was employed by Defendant Town of Mooresville's Police Department at all times relevant to this Complaint and Defendant Town of Mooresville exercised control over Deel's schedule, set the terms and conditions of her pay, and established requirements and standards for her job performance.

9. Deel began employment with Defendant Town of Mooresville's Police

Department in 2008 and was terminated by Defendant Town of Mooresville on or about June 14, 2019.

10. During the time period from the beginning of her employment with Defendant Town of Mooresville in 2008 until May 1, 2019, Deel performed her duties as a Police Records Clerk for the Criminal Investigation Division beyond a mere satisfactory standard.

11. Deel's performance was significant enough that she became a *de facto* chief custodian for the records of the Criminal Investigation Division of the Town of Mooresville's Police Department (hereinafter "Criminal Investigation Division").

12. Deel's position as *de facto* chief custodian for the records of the Criminal Investigation Division arose out of nearly eleven years of exemplary work by Deel and a record of trustworthiness and integrity in regard to her work and ability to keep confidential the facts of investigations found in the records she managed.

13. On or about May 4, 2019 a K9 Officer for the Mooresville Police Department was shot and killed during a routine traffic stop in Mooresville, North Carolina. The death of the Mooresville K9 Officer was the first on the job death of a Mooresville Police Officer in approximately 30 years and the Mooresville Police community was appropriately shocked and grieved by the officer's passing.

14. In the period following the K9 Officer's death, various police departments from the neighboring counties and municipalities, including but not limited to the Huntersville Police Department, volunteered to cover shifts and patrols which would otherwise be covered by Mooresville Police Officers. The Mooresville Police

Department utilized this time to provide an opportunity for members of the department to grieve, attend the K9 officer's funeral, and otherwise process the death of a fellow member of the Mooresville Police Department.

15. Deel herself did not attend work on May 10, 2019 as she taking time to mourn and process the death of the K9 Officer.

16. On May 10, 2019, another department, still covering for the Mooresville Police Department, responded to a call regarding an altercation which ended in the stabbing of another person. The victim in the altercation alleged that Thurman Houston, a town commissioner for Defendant Town of Mooresville, had been the individual who stabbed him.

17. On information and belief, the responding department to the specific stabbing was the Huntersville Police Department.

18. On information and belief, the responding department did not place any significance on the revelation that Thurman Houston, a sitting town commissioner, had allegedly stabbed another individual as they were unfamiliar with the makeup of the town commission of a neighboring town.

19. The responding department provided the report from the stabbing incident to the Mooresville Police Department, wherein it was placed in a stack of cases for which Deel would need to address when she returned to work.

20. Upon returning to work on or about May 12, 2019, in the normal course of her employment, Deel became aware that a sitting member of the town board of commissioners had allegedly stabbed another individual.

21. Deel performed her job in accordance with the expectations set out by the Town of Mooresville in handling the matter involving the alleged stabbing by Thurman Houston.

22. For twelve days, between May 12, 2019 and May 24, 2019, no substantial action was taken by Defendant Town of Mooresville's Police Department, Damon Williams, then Police Chief of Mooresville, or Defendant Childress regarding the alleged stabbing by Thurman Houston.

23. On information and belief, Defendant Childress and Thurman Houston have a close professional relationship as a result of both individuals being high-ranking members of local government.

24. On information and belief, Defendant Rase and Thuman Houston have a close professional relationship as a result of both individuals being high-ranking members of local government.

25. On information and belief, Defendant Childress intentionally slowed the investigation in order to give Thurman Houston time to clear his name.

26. On or about May 24, 2019, local news organizations learned about and subsequently reported the alleged stabbing of another individual by Thurman Houston.

27. On information and belief, Defendant Childress became concerned that the speed at which he handled the investigation left open the inference that he had done so due to Thurman Houston's position as a town commissioner.

28. On information and belief, Defendant Childress concluded that the local

news organizations source for the report on the alleged stabbing by Thurman Houston must have been a member of the Mooresville Police Department.

29. In response to this potential leak from within, Defendant Childress ordered Major Ron Chilton (hereinafter "Major Chilton")[1] to search Deel's desk for information related to the alleged stabbing by Thurman Houston.

30. Deel was confronted about whether she had knowledge of the alleged stabbing by Thurman Houston in after-hours text messages from Major Chilton on May 24, 2019.

31. Deel interpreted the invasion of her working area and implied accusation that she was the source for the local media stories as an insult to her ability to keep confidential information secret and responded to that effect in a series of text messages and a voicemail admonishing Major Chilton for searching her desk and otherwise impugning her character.

32. On or about May 28, 2019, an internal investigation was initiated against Deel, ostensibly related to the appropriateness of her comments to Major Chilton in the after-hours text messages and voicemail.

33. Between May 24, 2019 and May 31, 2019, Deel was harassed by Major Chilton and Captain Gaypeart Peralta (hereinafter "Captain Peralta") through text message, email, and phone calls with repeated allegations that Deel had leaked

---

[1] Major Chilton was demoted following an independent investigation into matters that, on information and belief, are not related solely to the actions alleged in this complaint. The title "Major" is used as it was his position at the time of the incident and will be the rank referenced in any evidence presented in accordance with these claims. The term "Major" should not otherwise be construed as a separate allegation of his current status that needs to be confirmed or denied.

information regarding the alleged stabbing by Defendant Houston to members of local news organizations and demanding she attend an internal affairs investigation on or about May 31, 2019.

34. On or about May 31, 2019, Deel was forced to sit for an internal affairs interview conducted by Captain Peralta.

35. During the nearly two-hour long interview conducted by Captain Peralta, the subject of Deel's comments to Major Chilton was not the main focus of the questioning.

36. The main focus of Captain Peralta's questioning was whether or not Deel had leaked information regarding the alleged stabbing by Thurman Houston to local news organizations.

37. In particular, Captain Peralta at one point described Thurman Houston as a "VIP", which on information and belief stands for "Very Important Person", making it clear that the focus of the investigation was on the source of the information regarding the alleged stabbing by Thurman Houston.

38. Despite ostensibly being related to Deel's comments to Major Chilton, the last words of the interview spoken by Captain Peralta was a question to Deel as to whether she leaked the report involving Thurman Houston to local news organizations.

39. Deel was harassed by Captain Peralta and Major Chilton during the week of May 27, 2019 to May 31, 2019 despite being on a pre-approved vacation during that time period.

40. Deel was forced to return early from her pre-approved vacation in order to sit for the interview with Captain Peralta.

41. On information and belief, Deel was required to end her vacation early and attend the interview not because of a valid reason related to the urgency of the matter being reviewed or spoliation of evidence, but because of a desire by Defendant Childress to retaliate against the individual whom he believed leaked information regarding the alleged stabbing involving Thurman Houston.

42. At all times relevant to this complaint, Deel has denied that she provided information regarding the alleged stabbing by Thurman Houston to any person outside of official communications within the Mooresville Police Department.

43. Following the interview, and under the stress of the investigation and the still recent death of the K9 Officer, Deel was out sick from June 3 through June 5, 2019 before returning to work on June 6, 2019.

44. On June 4, 2019 Deel's immediate supervisor informed her she would have to provide a doctor's note and file proper paperwork if she wished to miss more days without reprimand. Deel had not previously been required to fill such paperwork out or file paperwork related to similar short absences due to illness and, on information and belief, no other member of the department was held to such a standard.

45. On June 6, 2019 Deel returned to work, despite having a valid doctors note, due to continued harassment by Defendant Childress.

46. On information and belief, in the time period from June 4, 2019 to June 10,

2019, Defendant Childress moved, either himself or by ordering another employee of Defendant Town of Mooresville, the report involving Thurman Houston to a separate locked recordkeeping location.

47. On information and belief, Defendant Childress had the report involving Thurman Houston moved to prevent further leaks regarding the stabbing and associated actions, or lack thereof, taken by Defendant Childress and other members of the Mooresville Police Department.

48. On June 10, 2019 Defendant Childress, on behalf of Defendant Town of Mooresville, informed Deel that she was being terminated for violating the Police Department's Rules of Conduct by engaging in profane and unprofessional communication with Major Chilton.

49. Other male members of the Mooresville Police Department have engaged in similar and worse confrontations with coworkers and superiors and were not fired.

50. On information and belief, other male members of the Mooresville Police Department had been in similar and worse confrontations with coworkers and superiors and were not even officially reprimanded.

51. On information and belief another male officer was involved in an actual bar fight that was responded to by other members of the Mooresville Police Department and his only punishment was a write up and not termination.

52. One male Mooresville Police Detective informed another higher ranking individual to "get the fuck out of his office so he could do his job" and was not interviewed or investigated for insubordination.

53. On at least one occasion Damon Williams, then the Chief of Police for the Town of Mooresville, commented that Deel "looked like you need to eat something" in relation to Deel's physical appearance and stature.

54. According to Defendant Childress's letter, Deel's termination was to be effective on June 13, 2019.

55. Deel was terminated not due to the profanity or insubordination, but due to her sex and because Defendant Childress believed she provided local news organizations with information regarding Thurman Houston's alleged stabbing.

56. On information and belief, Defendant Childress benefited personally in suppressing the report involving Thurman Houston, and the speed for which such allegation was handled, due to his personal and professional relationship with Thurman Houston and the effect an inference of favoritism could have on his capacity to retain his position.

57. Deel timely filed, and was on heard on, appeals pursuant to Mooresville Police Department policy and the policy for employees of Defendant Town of Mooresville. Each of Deel's appeals were denied.

58. Deel's final appeal was an interview with Defendant Rase, then Acting Town Manager for the Town of Mooresville.

59. During her interview with Defendant Rase, Rase on multiple occasions asked Deel if she provided local media sources information involving the alleged stabbing involving Thurman Houston.

60. On information and belief, Defendant Rase benefited personally by upholding the retaliatory firing of the individual believed to be responsible for leaking information about an alleged stabbing by Thurman Houston as retaining his position as acting Town Manager, or being promoted to a more permanent position, partially relied upon his good relationship with Thurman Houston and other members of the Town of Mooresville Board of Commissioners.

61. After termination, Deel timely filed a complaint with the Equal Employment Opportunity Commission (hereinafter the "EEOC") on November 11, 2019 alleging discrimination on the basis of sex and retaliation as grounds for illegal termination. The EEOC subsequently conducted and completed their investigation and issued a dismissal and notice of right to sue on September 23, 2020.

### FIRST CAUSE OF ACTION
(Violation of First and Fourteenth Amendment Rights by Town of Mooresville)

62. Plaintiff hereby incorporates by reference paragraphs 1 through 61 as if fully stated herein.

63. Defendant Town of Mooresville employed Plaintiff in an at-will capacity until her termination on or about June 14, 2019.

64. Defendant Town of Mooresville terminated Plaintiff in retaliation for their belief that she was provided information regarding the alleged stabbing by Defendant Houston to local news organizations.

65. An incident wherein a sitting town council member allegedly stabbed

another person is a matter of public interest.

66. Firing an employee for speaking upon a matter of public interest is a violation of the First Amendment as incorporated to the states and local municipalities via the Fourteenth Amendment.

67. Plaintiff may properly bring an action against Defendant Town of Mooresville under 42 U.S.C §1983.

68. An employee may bring an action for violation of their constitutional rights under 42 U.S.C §1983 regardless of if they were actually engaged in protected activities, so long as the motivation behind the firing was the belief that the employee was engaged in protected activities. *Heffernan v. City of Paterson*, 136 S. Ct. 1412 (2016).

69. Plaintiff was damaged by Defendant's actions in an amount exceeding $25,000.00, to be proven with more specificity at trial. This amount includes lost wages and compensatory damages related to the Defendant's wrongful discharge of Plaintiff.

70. The Defendant's actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendant pursuant to N.C. Gen. Stat. §1D-15.

## SECOND CAUSE OF ACTION
(Violation of First and Fourth Amendment Rights by Defendants Childress and Rase)

71. Plaintiff hereby incorporates by reference paragraphs 1 through 70 as if

fully stated herein.

72. Defendants Childress and Rase colluded to suppress reports on the Town of Mooresville's, and by extension Defendants Childress and Rase', decisions regarding the alleged stabbing, and subsequent media reports of such stabbing, of another human by Thurman Houston.

73. Defendant Childress terminated Plaintiff's employment in retaliation for Defendants Childress' and Rase' belief that Plaintiff provided information to local news agencies regarding the stabbing of another person by Thurman Houston.

74. Defendant Rase upheld Plaintiff's termination on the belief that Plaintiff provided information to local news agencies regarding the stabbing of another person by Thurman Houston.

75. Defendants Childress and Rase acted under the color of state law by developing a pretextual reason for firing Plaintiff and initiating a harassment campaign prior to her firing in order to ascertain if she was the individual who leaked information regarding the alleged stabbing by Thurman Houston.

76. An incident wherein a sitting town council member allegedly stabbed another person is a matter of public interest.

77. Firing an employee for speaking upon a matter of public interest is a violation of the First Amendment as incorporated to the states and local municipalities via the Fourteenth Amendment.

78. Plaintiff may properly bring an action against Defendants Childress and Rase under 42 U.S.C §1983.

79. An employee may bring an action for violation of their constitutional rights under 42 U.S.C §1983 regardless of if they were actually engaged in protected activities, so long as the motivation behind the firing was the belief that the employee was engaged in protected activities. *Heffernan v. City of Paterson*, 136 S. Ct. 1412 (2016).

80. Plaintiff was damaged by Defendants' actions in an amount exceeding $25,000.00, to be proven with more specificity at trial. This amount includes lost wages and compensatory damages related to the Defendant's wrongful discharge of Plaintiff.

81. The Defendants' actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendants' pursuant to N.C. Gen. Stat. §1D-15.

## THIRD CAUSE OF ACTION
(Wrongful Discharge on the Basis of Sex in Violation of 42 U.S.C. § 2000e-2)

82. Plaintiff hereby incorporates by reference paragraphs 1 through 81 as if fully stated herein.

83. Defendant Town of Mooresville employed Plaintiff in an at-will capacity until her termination on or about June 14, 2019.

84. Plaintiff was terminated due to her sex and not due to the pretextual reasons provided by Defendant.

85. Defendant Town of Mooresville's termination of Plaintiff was and is in violation of 42 U.S.C §2000e through 42 U.S.C. §2000e-3.

86. Plaintiff was damaged by Defendant's actions in an amount exceeding $25,000.00, to be proven with more specificity at trial. This amount includes lost wages and compensatory damages related to the Defendant's wrongful discharge of Plaintiff.

87. The Defendant's actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendant pursuant to N.C. Gen. Stat. §1D-15.

## PRAYER OF RELIEF

NOW WHEREFORE the Plaintiff does pray the Court as follows:

1. That the Plaintiff have and recover a judgment against Defendant in an amount to exceed $25,000.00, to be proven more specifically at the time of trial, which judgment shall include lost wages, lost benefits, and economic and compensatory damages as allowed by law.

2. That an award of punitive damages against the Defendant be assessed for the Defendant's willful and wanton disregard of the Plaintiff's rights pursuant to N.C. Gen. Stat. §1D-15.

3. That all issues so triable be tried by jury.

4. That the cost of this action be taxed against the Defendants.

5. For such further and other relief as the Court deems just, fitting, and proper.

This is the 23rd day of December, 2020.

[signature line to follow]

**Pope McMillan, P.A.**
Attorneys for the Plaintiff

By: _____

Clark D. Tew
N.C. State Bar No. 41632
P.O. Drawer 1776
Statesville, NC 28687
(704) 873-2131
ctew@popemcmillan.com